IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 23-cr-00472-DDD

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

1. **CHRISHEENA SHANTE MCGEE a/k/a CHRISTINA MARIUS,**
2. **SANDRA PIERCE BACON,**

    Defendants.

---

## INDICTMENT

---

The Grand Jury charges:

### COUNTS 1-12
### Wire Fraud and Aiding and Abetting, 18 U.S.C. §§ 1343 and 2

**Relevant Individuals**

    1.    Defendant CHRISHEENA SHANTE MCGEE a/k/a CHRISTINA MARIUS resided in Louisiana until in or around May 2019 and in Texas from in or around June 2019 until at least in or around July 2021. During this period, she held herself out as operating the following businesses, among others: (a) Branded Asset Management Group; (b) Gold Brand Trust; (c) First Allegiance Capital; (d) KC Gull Industries Trust; and (e) Champion Lending.

    2.    Defendant SANDRA PIERCE BACON resided in Fredericksburg, Virginia. BACON was a director and principal for First Title, Inc. (incorporated in Virginia in 1981)

and The Bacon Group Inc. (incorporated in Virginia in 2004).  From at least May 2019 through at least March 2021, BACON acted as escrow agent for MCGEE's companies and provided other financial services, such as paying sales commissions.

3. Entities represented by brokers, agents, investors, and principals entered into agreements with MCGEE and BACON for loans from MCGEE and her companies in exchange for payment of an advance fee to BACON.  As escrow agent for MCGEE's companies, BACON collected advance fees from agents or investors ("Victims") of the entities seeking loans.  Some Victims were individuals, while others were groups of entity investors.  BACON promised to hold Victim advance fees in escrow until the loan closed or the advance fees were returned.

**The Scheme**

4. Beginning in or around at least May 2019, and continuing through at least in or around March 2021, in the State and District of Colorado and elsewhere, defendants CHRISHEENA SHANTE MCGEE, SANDRA PIERCE BACON, and other accomplices known and unknown to the grand jury devised, intended to devise, and participated in a scheme and artifice to defraud and to obtain money and property from Victims and aided and abetted the same by means of materially false and fraudulent pretenses, representations, and promises, to wit, that MCGEE had sources of money available to obtain large capital loans for entities seeking the loans after Victims deposited a lesser amount as an advance fee to an escrow account managed by BACON, and that MCGEE and BACON would safely keep the money in escrow until the loan was funded (hereinafter referred to as "the Advance-Fee Scheme").

**Manner and Means of the Scheme**

It was part of the Advance-Fee Scheme that:

5. MCGEE falsely represented to entities seeking loans that she had access to sources of money to fund loans of up to $150,000,000. She falsely represented that she would obtain the loan money if Victims would pay an advance fee—often about 10% of the total loan amount—into an escrow account managed by BACON.

6. MCGEE and BACON falsely represented to Victims that BACON would hold in escrow advance fees paid to secure the loans until the loans were funded.

7. When Victims or other persons associated with an entity seeking a loan asked to use a different escrow agent, MCGEE stated that she would only provide funding if BACON served as escrow agent.

8. As a result of false representations made by MCGEE, BACON, and accomplices known and unknown to the grand jury, at least ten Victims (Victims 1-10) entered into escrow agreements agreeing to pay approximately $14,801,002.75 in advance fees:

| Victim | Date(s) of Fee Payment(s) (on or about) | Total Advance Fees Paid |
|---|---|---|
| 1 | May 15, 2019 | $ 1,500,000 |
| 2 | May 31, 2019 - June 4, 2019 | $ 1,088,502.74 |
| 3 | June 3, 2019 | $ 1,000,000 |
| 4 | August 30, 2019 | $ 500,000 |
| 5 | December 3 - 9, 2019 | $ 1,252,500 |
| 6 | March 11, 2020 | $ 450,000 |
| 7 | June 16, 2020 | $ 2,000,000 |
| 8 | July 9, 2020 | $ 300,000 |
| 9 | June 10, June 17, and September 2, 2020 | $ 2,210,000 |
| 10 | August 20, 2020 - November 4, 2020 | $ 4,500,000 |
| **Totals** | **May 15, 2019 - November 4, 2020** | **$ 14,801,002.74** |

9. These escrow agreements contained false representations about the escrow money. These false representations included, among others, that BACON would hold advance fees in escrow, invest escrow money in T-Bills to earn interest if full funding was not provided by a specified date, return the advance fee upon request, or apply the advance fee to the loan amount at closing. Upon receiving these promises, individuals and businesses including Victim 5, a resident of Aspen, Colorado, paid advance fees to BACON.

10. During the Advance-Fee Scheme, MCGEE's role included drafting the escrow agreement and negotiating conditions related to the release and distribution of escrow funds.

11. BACON's role included signing escrow agreements, accepting advance fees, and serving as the escrow agent who controlled escrow bank accounts. As escrow agent, she was responsible for ensuring that advance fees were not released from escrow accounts prematurely. She acknowledged to a broker for Victim 5 that "I have an obligation to the people with escrow deposits." Despite her promises and obligations related to the escrow money, it was part of the Advance-Fee scheme that BACON falsely represented to Victims that she continued to hold their advance fees in escrow despite knowing she did not.

12. After MCGEE and BACON falsely represented they would hold advance fees in escrow, they used them for other purposes:

    a. Beginning in at least May 2019, MCGEE directed BACON to wire advance fees (a) to purchase properties, make business loans, and

        pay commissions to brokers so that MCGEE could start a residential and commercial lending business, and (b) to purchase financial instruments called standby letters of credit, so MCGEE could try to leverage them to obtain the loans she had promised. BACON—despite knowing her obligation to hold the money in escrow—initiated these wire transfers.

    b.    As a result of MCGEE and BACON spending or losing the money of Victims—despite promises to hold it in escrow—they accrued larger and larger debts owed to previous victims of the Advance-Fee Scheme. When upset Victims began to demand return of their advance fees or threaten lawsuits, MCGEE and BACON began using advance fees collected from new victims in Ponzi-like fashion to repay earlier Victims of the Advance-Fee Scheme.

13. It was part of the Advance-Fee Scheme that MCGEE provided commitment letters, emails, and text messages to Victims and entities seeking loans reassuring them of her and her companies' commitment to provide the full loan funding by a certain date and falsely representing, among other things, that advance fees would remain in escrow until closing and applied to the total loan amount at that time.

14. When Victims and entities seeking loans sought reassurance from MCGEE and BACON that their money remained in escrow, MCGEE and BACON falsely represented that they still held in escrow the advance fees and could return them upon request. For example, on June 9, 2020, BACON told a broker for Victim 5 that MCGEE

could not spend Victim 5's escrow money because "I won't let her." In reality, BACON had already transferred, and knew she had transferred, over 97.8 percent of Victim 5's money out of escrow—much of it at MCGEE's direction—nearly six months earlier, by December 12, 2019.

15. After committing to deliver loan funding by a specific closing date, it was part of the Advance-Fee Scheme that MCGEE would delay loan closing dates multiple times under false pretenses, such as stating that the delay was caused by her lawyers, the time needed to acquire a financial institution, or bank processing procedures.

16. MCGEE and BACON represented that BACON would hold advance fees in escrow despite transferring, or directing the other to transfer, this money out of an escrow account within days or weeks of receipt. For example:

    a. Within days of Victim 5 paying $1,252,500 to BACON across two payments in December 2019, BACON transferred $800,000 of Victim 5's money to Victim 2, an earlier victim of the Advance-Fee Scheme.

    b. The same day BACON received $700,000 from Victim 10—based in Idaho Springs, Colorado—to hold in escrow, she wired $312,000 of Victim 10's money to Victim 8, an earlier victim of the Advance-Fee Scheme.

    c. BACON transferred over $800,000 of Victim escrow money to MCGEE and to companies related to MCGEE. For example, MCGEE used approximately $198,526.25 of victim escrow money

        to purchase real property, approximately $90,854.24 to purchase a BMW, and approximately $30,159 to purchase a Cadillac Escalade.

17. When Victims and entities seeking loans requested updates about loan status from MCGEE, she produced fabricated proof-of-fund statements and pre-approval letters to falsely represent that MCGEE and her businesses had sufficient money to close the loans and return escrow money, including the following:

    a. In a letter dated April 3, 2020, MCGEE falsely represented that Bank 1 had pre-approved a loan of $10 million that would fund a loan related to Victim 5. In reality, Bank 1 had no communications or relationship with MCGEE and had not provided pre-approval. Instead, MCGEE used the letter purportedly issued by Bank 1 to falsely represent that she had Bank 1's backing.

    b. On or about February 10, 2021, after Victim 10 requested proof of funds from MCGEE, she emailed a broker for Victim 10 a bank statement purporting to be from Bank 2 that purported to show her business bank account had a balance of over $7 million. In reality, the bank account had a balance of less than $14,000. MCGEE provided a fabricated bank statement to create the appearance that the account at Bank 2 had sufficient funds to cover the first loan installment owed to Victim 10.

18. When Victims or entities seeking loans requested confirmation from BACON that she retained their funds in escrow, BACON falsely represented that she

did. For example, on or about June 17, 2020, when Victim 3 asked for such confirmation, BACON signed and dated a document affirming that $1,000,000 paid into her escrow account by Victim 3 on or about June 3, 2019 was being held in escrow. In reality, BACON had transferred the money out of escrow over a year earlier, by on or about June 14, 2019.

19. If Victims demanded return of advance fees, BACON falsely represented that she could not return money because she lacked authorization, despite knowing that the true reason was that the money was no longer in her possession.

20. To conceal their fraud, lull Victims into a false complacency, and delay lawsuits, MCGEE and BACON falsely represented to Victims and entities seeking loans that they had secured new funding sources or had received deposits sufficient to fund outstanding loans and were only awaiting final approvals and processing by third parties such as lawyers, accountants, banks, and wire transfer services.

**Execution of the Scheme**

21. On or about the dates set forth below, in the State and District of Colorado, and elsewhere, defendants MCGEE and BACON caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, and aided and abetted the same, as set forth below:

| Count | Date | Description of Wire |
|---|---|---|
| 1 | 12/03/2019 | $626,250 wire from Victim 5 bank account in Colorado to First Title bank account ending in 9654 outside of Colorado |
| 2 | 12/09/2019 | $626,250 wire from Victim 5 bank account in Colorado to First Title bank account ending in 9654 outside of Colorado |
| 3 | 3/13/2020 | Text message from MCGEE to brokers for Victim 5 related to posting of loan funds sent from outside of Colorado to recipient in Colorado |
| 4 | 8/20/2020 | $1,500,000 wire from Victim 10 bank account in Colorado to First Title bank account ending in 8730 outside of Colorado |
| 5 | 9/03/2020 | $700,000 wire from Victim 10 bank account in Colorado to First Title bank account ending in 8730 outside of Colorado |
| 6 | 9/28/2020 | $350,000 wire from Victim 10 bank account in Colorado to First Title bank account ending in 7372 outside of Colorado |
| 7 | 10/02/2020 | $200,000 wire from Victim 10 bank account in Colorado to First Title bank account ending in 7372 outside of Colorado |
| 8 | 10/13/2020 | $350,000 wire from Victim 10 bank account in Colorado to First Title bank account ending in 7372 outside of Colorado |
| 9 | 10/26/2020 | $500,000 wire from Victim 10 bank account in Colorado to First Title bank account ending in 7372 outside of Colorado |
| 10 | 11/02/2020 | $400,000 wire from Victim 10 bank account in Colorado to First Title bank account ending in 7372 outside of Colorado |
| 11 | 11/04/2020 | $500,000 wire from Victim 10 bank account in Colorado to First Title bank account ending in 7372 outside of Colorado |
| 12 | 2/5/2021 | Email from MCGEE related to incoming funds sent from outside of Colorado to recipient in Colorado |

All in violation of Title 18, United States Code, Sections 1343 and 2(a).

## Forfeiture Allegation

22. The allegations contained in Counts 1 through 12 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

23. Upon conviction of the violations alleged in Counts 1 through 12 of this Indictment involving the commission of violations of 18 U.S.C. § 1343, defendants CHRISHEENA SHANTE MCGEE and SANDRA PIERCE BACON, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c) any and all of the defendants' right, title and interest in all property constituting and derived from any proceeds the defendants obtained directly and indirectly as a result of such offense, including, but not limited to:

a) All funds seized from Bank of America account #4350 5002 4630 in the name of First Title, Inc.;

b) All funds seized from Bank of America account ending in 4656 in the name of First Title, Inc.;

c) All funds seized from Bank of America account ending in 4669 in the name of First Title, Inc.;

d) All funds seized from Bank of America account ending in 4672 in the name of First Title, Inc.;

e) All funds seized from Bank of America account ending in 4685 in the name of First Title, Inc.;

f) All funds seized from Navy Federal Credit Union accounts for access #8615594 in the name of First Title, Inc.;

g) All funds seized from Wells Fargo Bank account #8070532661 in the name of KC Gull Industries Trust Christeena S McGee TTE;

  h)  2021 BMW X6, bearing vehicle identification number #5UXCY6C02M9E26909;

  i)  2016 Cadillac Escalade, bearing vehicle identification number #1GYS3DKJ5GR265560; and

  j)  A money judgment in the amount of proceeds obtained by the defendants.

24. If any of the property described above, as a result of any act or omission of the defendants:

  a)  cannot be located upon the exercise of due diligence;

  b)  has been transferred or sold to, or deposited with, a third party;

  c)  has been placed beyond the jurisdiction of the Court;

  d)  has been substantially diminished in value; or

  e)  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

        A TRUE BILL

        <u>Ink signature on file in Clerk's Office</u>
        FOREPERSON

COLE FINEGAN
United States Attorney

By: *s/ Craig G. Fansler*
Craig G. Fansler
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0409
E-mail: Craig.Fansler2@usdoj.gov
Attorney for the United States